**Harry G. GUST, Jr., Plaintiff,**

v.

**The COLEMAN COMPANY, INC., and The Coleman Company, Inc. Pension Plan For Weekly Salaried and Hourly Paid Employees, Defendants.**

No. 88–1081–C.

United States District Court,
D. Kansas.

July 5, 1990.

Terry L. Unruh, Wichita, Kan., for plaintiff.

Charles P. Efflandt, Foulston & Siefkin, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on motions for summary judgment filed by both sides. Plaintiff, Harry G. Gust, Jr., brings this action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B), to recover certain disability pension benefits under The Coleman Company, Inc. Pension Plan for Weekly Salaried and Hourly Paid Employees (Plan). Plaintiff applied for disability benefits under the Plan after suffering a job-related injury that left him permanently and totally disabled.

The Plan Administrator, The Coleman Company's Retirement Committee, found that plaintiff met the Plan requirements of disability and eligibility but that he was not entitled to pension benefits because they were subject to a setoff for the full amount of his worker's compensation award. Plaintiff claims the Plan does not allow a setoff here because the worker's compensation award was assessed against the State Workers' Compensation Fund rather than The Coleman Company, Inc. (Coleman), as the employer. Plaintiff alternatively argues that if a setoff is permitted under the Plan, Coleman may only deduct the actual amount it contributes to the Workers' Compensation Fund which is attributable to plaintiff's compensation award. Defendants contend the Retirement Committee properly interpreted and applied the Plan.

For the most part, both sides agree the material facts are uncontroverted. In his motion, plaintiff says the pertinent language of the Plan is plain and unambiguous and should be construed as a matter of law to require payment of plaintiff's pension benefits without any setoff. (Dk. 23 at 17). To defendants' motion, plaintiff responds that a question of fact exists concerning the amount of defendants' contribution to the Fund which has been ultimately received by plaintiff in his compensation award. Because this fact does not affect the court's determination of this case under the controlling substantive law, it is not material. *See Anderson v. Liber-*

*ty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

Summary judgment is to be granted when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Factual inferences are drawn to favor the existence of triable issues, and where reasonable minds could ultimately reach different conclusions, summary judgment is inappropriate. *See Riley v. Brown & Root, Inc.,* 896 F.2d 474, 476–77 (10th Cir.1990). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

For purposes of these motions for summary judgment, the following facts are uncontroverted:

1. Plaintiff, Harry G. Gust, Jr., began work at The Coleman Company on January 25, 1960. He is 58 years of age with a birth date of February 16, 1932.

2. On or about August 1, 1980, plaintiff suffered an accidental injury to his back arising out of and in the course of his employment with Coleman. He was granted a medical leave of absence from work from August 18, 1980, through November 10, 1980. He returned to active employment in November of 1980 and continued until he was again placed on medical leave of absence on January 25, 1982. During this latter period of employment, plaintiff's physical condition deteriorated and was aggravated by his work. He remained on this second leave of absence until his retirement from Coleman in March of 1986.

3. Gust filed on August 10, 1984, a claim for workers' compensation with Coleman for this injury. Coleman is a qualified self-insured for workers' compensation purposes.

4. Coleman filed on August 28, 1984, a notice impleading the Workers' Compensation Fund of the State of Kansas (Fund). The notice alleges potential liability of the Fund for compensation and other costs as a result of the presence of a pre-existing impairment contributing to Gust's accident and injury. At the administrative level, Coleman's position was that the full amount of any compensation award to Gust should be assessed against the Fund.

5. The Administrative Law Judge (ALJ) awarded Gust medical expenses and compensation for a temporary total disability at $170 per week for 114.29 weeks followed by compensation for a permanent total disability at $170 per week but not to exceed $100,000. Finding that Coleman knew of Gust's history of back problems and that the accidental injury would not have occurred but for his pre-existing condition, the ALJ held the Fund responsible for the entire award. The Fund appealed the award to the Workers' Compensation Director and then to the District Court of Sedgwick County, Kansas. The award was affirmed at both levels of appellate review.

6. Plaintiff is a participant in The Coleman Company Inc. Pension Plan for Weekly Salaried and Hourly Paid Employees (Plan). On January 21, 1986, he applied for disability retirement benefits under the Plan. When he applied, plaintiff was permanently and totally disabled and met the eligibility requirements concerning employment classification and years of service.

7. By letter dated May 6, 1986, the Retirement Committee, acting as the Plan Administrator, informed plaintiff that he was not then entitled to disability pension benefits because Section 4.7 of the Plan was applicable and required the offset of the full amount of his workers' compensation award against his disability pension benefit.

8. Section 4.7 of the Plan provides in pertinent part:

*Any amount paid to or on behalf of any Employee or Pensioner on account of injury or occupational disease causing disability in the nature of a permanent disability for which the Company ... is liable pursuant to Worker's Compensation or occupational disease laws ... and any disability payment in the nature of a pension under an federal or*

state laws under which the Company ... is required to make contributions ..., *shall be deducted from or charged against the amount of any pension payable under this Section 4;* provided, that, deduction for all such benefits shall be made only with respect to the period in which they are actually paid to such Employee. In the case of lump-sum settlement under Worker's Compensation, the lump sum shall be divided by the weekly payment to which the Employee was entitled under Worker's Compensation in order to determine the period with respect to which Worker's Compensation benefits are payable for the purposes of this Section 4.7.

9. By letter dated June 30, 1986, Gust requested a review of the Retirement Committee's decision of May 6, 1986. Plaintiff, through his attorney, submitted his written statement and arguments for appeal to the Retirement Committee. By letter dated October 3, 1986, the Retirement Committee affirmed its prior decision denying plaintiff immediate entitlement to disability pension benefits.

10. The Retirement Committee is appointed to act for Coleman as the administrator of the Plan. (Plan, § 8.2). In that role, the Committee is vested with "such powers as may be necessary to carry out the provisions of this Plan, with full authority, at any time and from time to time, to establish rules for the administration of this Plan and the transaction of this Plan's business." (Plan, § 8.1). Coleman and its acting administrator are required to pursue uniform policies and to not discriminate towards any employee(s) in making any determination or rule in the exercise of their administrative authority. (Plan, § 8.1). Among the powers and duties specifically given to the Retirement Committee, are the following:

(b) To determine the rights of eligibility of an Employee to participate in the Plan and the value of a Participant's benefit;

(c) To adopt rules of procedure and regulations necessary for the proper and efficient administration of the Plan, in-

cluding procedures in Section 9.3, provided the rules are not inconsistent with the terms of this Plan;

(d) To enforce the terms of the Plan and the rules and regulations adopted by the Retirement Committee;

. . . .

(f) To review and render decisions respecting the denial of a claim for benefit under the Plan; . . . .

(Plan, § 8.4).

11. Each year Coleman, as a self-insurer, is assessed and contributes an amount of money to the support of the Workers' Compensation Fund (Fund) pursuant to K.S.A. 44–566a. Of the Fund's total assessment, Coleman is assessed a percentage or proportion equal to the proportion or percentage of all workers' compensation claims paid by Coleman in the immediately preceding calendar year. K.S.A. 44–566a(b)(2).

12. Other than the plaintiff's application, the Retirement Committee has not had another occasion to apply section 4.7 in circumstances where the employee's workers' compensation award was assessed against the Fund.

There are two primary issues to this case—what is the appropriate standard of review and, when applied, is the Retirement Committee's interpretation of section 4.7 in error. Since both sides have filed dispositive motions, it is not surprising that they chose different issues to emphasize in their arguments. Plaintiff downplays the importance of applying the appropriate standard of review and, instead, contends the Committee's construction of section 4.7 is wrong under either standard—*de novo* or arbitrary and capricious. Defendants take their primary stand behind the deferential review accorded the Retirement Committee under a standard of arbitrary and capricious. The court's study of the case law reveals it must first select the correct standard of review. In this instance, the outcome of the entire case turns upon this initial determination.

■ Before the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103

L.Ed.2d 80 (1989), the Tenth Circuit had limited judicial review of the denial of an employee's benefits to whether it was arbitrary and capricious. *Naugle v. O'Connell*, 833 F.2d 1391, 1393 (10th Cir.1987). In *Bruch*, the Supreme Court set out to resolve the conflict between the circuits on the appropriate standard of judicial review of benefit determinations by plan administrators under 29 U.S.C. § 1132(a)(1)(B) of ERISA. The Court first noted that ERISA was silent on the governing standard and that the courts, consequently, had resorted to the arbitrary and capricious standard operating under § 302 of the Labor Management Relations Act. 489 U.S. at ——, 109 S.Ct. at 952–53, 103 L.Ed.2d at 91. The Court concluded that *"wholesale importation"* of this standard was not justified and that trust law should guide the determination of the appropriate standard of review. *Id.* 489 U.S. at ——, 109 S.Ct. at 952–54, 103 L.Ed. at 91–92. The Supreme Court outlined the relevant trust law as follows:

> Trust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers. See Restatement (Second) of Trusts § 187 (1959) ("[w]here discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion"). (citation omitted). A trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable. (citation omitted). Whether "the exercise of a power is permissive or mandatory depends upon the terms of the trust." 3 W. Fratcher, Scott on Trusts § 187, p 14 (4th ed 1988). Hence, over a century ago we remarked that "[w]hen trustees are in existence, and capable of acting, a court of equity will not interfere to control them in the exercise of a *discretion vested in them by the instrument* under which they act." *Nicholas v. Eaton*, 91 U.S. 716, 724–725, 23 L.Ed. 254 (1875) (emphasis added). See also *Central States, Southeast & Southwest Areas*

*Pension Fund v. Central Transport, Inc.*, 472 U.S. [559] at 568, 86 L.Ed.2d 447, 105 S.Ct. 2833 [2839] ("the trustees' determination that the trust documents authorize their access to records here in dispute has significant weight, for the trust agreement explicitly provides that 'any construction [of the agreement's provisions] adopted by the Trustees in good faith shall be binding upon the Union, Employees, and Employers.'"). Firestone can seek no shelter in these principles of trust law, however, for there is no evidence that under Firestone's termination pay plan the administrator has the power to construe uncertain terms or that eligibility determinations are to be given deference. 489 U.S. at ——, 109 S.Ct. at 953–55, 103 L.Ed.2d at 92–93. The Supreme Court later summarized its holding as being "that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. at ——, 109 S.Ct. at 956–57, 103 L.Ed.2d at 95.

One court describes the effect of the *Bruch* decision as sweeping the standard of review board clear and supplanting the varied approaches without disturbing all of the underlying concepts embodied in those standards. *De Nobel v. Vitro Corp.*, 885 F.2d 1180, 1185 (4th Cir.1989). While the *Bruch* case addressed some of the conflicts and disagreements over the standard of review existing at that time between the courts of appeal, new ones have emerged primarily as a result of efforts to apply the *Bruch* ruling. The present case requires addressing some of these "new" issues.

Since *Bruch*, the circuit courts have focused on how specific the plan language must be to constitute a grant of discretionary authority within the contemplated terms of *Bruch*. The Tenth Circuit has not confronted this question and the decisions from other circuits are far from uniform on what particular language is necessary to trigger the *Bruch* exception. A deferential

standard of review has been justified by these courts upon finding that the following terms of the plans conveyed discretionary authority to the fiduciary or administrator. *Exbom v. Central States Health and Welfare Fund,* 900 F.2d 1138, 1141–42 (7th Cir.1990) (The plan expressly gave the trustees the power to construe its provisions and made their good faith construction binding); *Jordan v. Cameron Iron Works, Inc.,* 900 F.2d 53, 55 (5th Cir.1990) (The Committee had the power under the plan to oversee and supervise the administration of the plan; to construe all terms, provisions, and limitations; and to determine all questions relating to eligibility); *Penn v. Howe–Baker Engineers, Inc.,* 898 F.2d 1096, 1099 (5th Cir.1990) (Committee had authority under plan to determine benefit eligibility); *Stoetzner v. U.S. Steel Corp.,* 897 F.2d 115, 119 n. 5 (3rd Cir.1990) (The Administrator's decisions were "final and conclusive as to all questions of interpretation and application of these Pension Rules...."); *Richards v. United Mine Wkrs. Health & Ret. Fund,* 895 F.2d 133, 135 (4th Cir.1990) (The Trustees were authorized to make "full and final determination as to all issues concerning eligibility for benefits" and "to promulgate" binding rules and regulations in implementing the plan); *Guy v. Southeastern Iron Workers' Welfare Fund,* 877 F.2d 37, 39 (11th Cir. 1989) (The plan conferred to the Trustees the "full and exclusive authority to determine all questions of coverage and eligibility" and "full power to construe the provisions...."); *Lakey v. Remington Arms Co., Inc.,* 874 F.2d 541, 544 (8th Cir.1989) (The Company said in its own policy that it was attempting to interpret the more typical situations involving the application of the policy); *Boyd v. Tr. of United Mine Wrkrs. Health & Ret. F.,* 873 F.2d 57, 59 (4th Cir.1989) (Pension plan empowered the Trustees to make "full and final determination as to all issues concerning eligibility for benefits" and "to promulgate rules and regulations to implement" the plan); *Stormont–Vail Regional Medical Center v. Kansas Building Trades Open–End Health and Welfare Fund Uninsured Benefit Plan,* No. 88–4146, 1990 WL 11377 (D.Kan. Jan. 8, 1990) (O'Connor, C.J.) (1990 U.S. Dist. LEXIS 1424) (Trustees had authority to amend and to interpret the plan which included the terms of eligibility).

At the same time, some circuit courts have reviewed the administrator's decision under a *de novo* standard in the following circumstances. *Michael Reese Hosp. v. Solo Cup Emp. H. Ben. Plan,* 899 F.2d 639, 641 (7th Cir.1990) (A provision giving the Company authority to control and manage the operation and administration of the plan does not give the discretion necessary to meet the *Bruch* exception); *Baxter By and Through Baxter v. Lynn,* 886 F.2d 182, 187–88 (8th Cir.1989) (Though the plan gave the Trustees final authority to determine all matters of eligibility, the court reasoned that the Trustees' were given a mandatory duty which did not carry with it the discretionary authority to construe ambiguous terms of the plan); *Wallace v. Firestone Tire & Rubber Co.,* 882 F.2d 1327, 1329 (8th Cir.1989) (Company's authority to change benefits without notice is separate and distinct from the discretionary authority to determine eligibility under the plan).

With the exception of one or two of the decisions, both lines of decisions can be reconciled as the result of a case-by-case assessment of the language from the particular plan. A comparison of the language found in Coleman's Plan with the facts from the above decisions convinces this court that the Plan vests the Retirement Committee with that discretion discussed in *Bruch,* the exercise of which is reviewable only under a deferential standard. By virtue of the Plan, the Retirement Committee possesses "such powers as may be necessary to carry out the provisions of the Plan." The Committee has full authority to establish rules for administering the Plan. The Plan also requires the administrator to pursue uniform policies and to not discriminate towards any employee(s) in making a determination or rule in the exercise of its administrative authority. Specifically, the Committee is given the powers to determine an employee's eligibility to participate, to adopt rules and

regulations for administering the Plan, to enforce the Plan's terms, and to review and render decisions respecting the denial of benefit claims under the Plan. These provisions expressly give the Retirement Committee the discretion to determine eligibility for benefits and implicitly confer the discretion to interpret the terms of the Plan in enforcing it, deciding claims under it, and determining eligibility of employees for it.

Plaintiff offers a much narrower reading of the Plan. He sees no express or literal term giving the administrator final authority or discretion to construe terms of the Plan. To plaintiff, the discretion conferred by the Plan is no different from that inherently possessed by a fiduciary under ERISA. Plaintiff points to that portion of *Bruch* in which the Supreme Court rejected the employer's argument that under ERISA a trustee is empowered to exercise all of his authority in a discretionary manner. The Court noted:

> But the provisions relied upon so heavily by Firestone do not characterize a fiduciary as one who exercises entirely discretionary authority or control. Rather, one is a fiduciary to the extent he exercises any discretionary authority or control. Cf. *United Mine Workers of America Health & Retirement Funds v. Robinson*, 455 U.S. 562, 573–574, 71 L.Ed.2d 419, 102 S.Ct. 1226 [1232–1233] (1982) (common law of trusts did not alter non-discretionary obligation of trustees to enforce eligibility requirements as required by LMRA trust agreement).

489 U.S. at ——, 109 S.Ct. at 955, 103 L.Ed.2d at 94. This court understands that passage to say that a trustee's discretionary authority inherent in the exercise of his powers under ERISA is not the comprehensive type of discretion which will be reviewed under a deferential standard. Stated another way, the Plan may vest some discretion in the trustee without conferring him or her the discretionary authority to determine eligibility for benefits or to construe the terms of the plan. As indicated by the Court's parenthetical comment to the *Robinson* case, a trustee's obligation to enforce eligibility requirements is not the power to exercise discretionary authority.

None of these points are sustained by the facts of this case. The Plan here unequivocally gives the Retirement Committee the power to determine eligibility for participation and the value of any benefits and does not merely mandate the Committee's enforcement of its terms and requirements. This is precisely the nature and extent of discretion that the Supreme Court in *Bruch* said would trigger a deferential standard of review.

The test in *Bruch* does not demand any magic words, such as "discretion," "deference," "construe," or "interpret." Nor does it require the court to engage in semantic hairsplitting. *De Nobel v. Vitro Corp.*, 885 F.2d at 1187. If from the face of the plan documents it appears the administrator has the power to construe disputed terms *or* to resolve disputes over eligibility for benefits, then the administrator's exercise of that discretion is entitled to deference. *Id.* Hence, the court cannot base its decision on the absence of these key words from the Plan and, instead, must give a fair reading to the whole document. The Plan, fairly construed, provides the Retirement Committee with the discretion to determine eligibility for benefits.

For plaintiff's position to be consistent with the language in *Bruch*, one must ignore the Supreme Court's disjunctive wording of the administrator's discretion—"to determine eligibility for benefits *or* to construe the terms of the plan." 489 U.S. at ——, 109 S.Ct. at 956, 103 L.Ed.2d at 95 (emphasis added). In phrasing this test of discretionary authority as it did, the Supreme Court implies that the determination of eligibility necessarily entails the exercise of interpretative powers. This deliberate choice of words cannot be easily overlooked. Indeed, courts have reviewed the administrator's decision under a deferential standard even though the plans did not expressly give the administrator the power to construe or interpret ambiguous terms of the plan. *See, e.g., Richards v. United Mine Wkrs. Health & Ret. Fund*, 895 F.2d at 135; *Lakey v. Remington Arms Co., Inc.*, 874 F.2d at 544; *Boyd v. Tr. of United Mine Wrkrs. Health & Ret. F.*, 873 F.2d

at 59. *Contra Baxter By and Through Baxter v. Lynn,* 886 F.2d at 187–88 (The Eighth Circuit here chose to read the provision authorizing the trustee's determination of eligibility as only describing a mandatory responsibility rather than a discretionary power. The Coleman Plan is not susceptible to a similar tortured reading). Since the Plan vests the Retirement Committee with one of the discretionary powers, the Committee's decisions must be accorded a measure of deference.

An act is discretionary when a choice must be made in the exercise of judgment on what is proper under the circumstances. Black's Law Dictionary 419 (5th ed. 1979). It follows that a power may be defined and circumscribed to such an extent that its exercise is not discretionary. The Retirement Committee's power under the Plan to determine eligibility is not an example of this. The Plan does not simply mandate the Committee's enforcement of its terms, but goes on to give the Committee rule-making power necessary for the proper, uniform, and non-discriminatory administration of it. More importantly, the Plan grants the Committee the power to "determine the *rights* of eligibility of an Employee to participate in the Plan...." The Plan does not give any other person or entity the authority to determine eligibility or to construe its terms. For all of these reasons, the court finds that the Retirement Committee's interpretation of section 4.7 is entitled to deference.

■ After *Bruch*, the courts are unsure what is the proper deferential standard of judicial review. The Supreme Court referred to several possible standards: arbitrary and capricious, abuse of discretion, and reasonableness. 489 U.S. at ——, 109 S.Ct. at 952–57, 103 L.Ed.2d at 91–95. As a result, some courts have applied the arbitrary and capricious standard, see *Lakey v. Remington Arms Co., Inc.,* 874 F.2d at 545; other courts have equated abuse of discretion with arbitrary and capricious and have used them interchangeably, see *Brown v. Blue Cross & Blue Shield of Alabama,* 898 F.2d 1556, 1558 n. 1 (11th Cir.1990); other courts have recognized a

distinction between these two with the abuse of discretion standard being broader and less deferential than the arbitrary and capricious standard, see *Richards v. United Mine Wkrs. Health & Ret. Fund,* 895 F.2d at 135–36; one court has applied an abuse of discretion standard that varies according to the terms of the Plan from the least deferential test of reasonableness to the most deferential standard of arbitrary and capricious, see *Exbom v. Central States Health and Welfare Fund,* 900 F.2d at 1142, and still other courts consider the *Bruch* decision to have abandoned the arbitrary and capricious test leaving the abuse of discretion standard, see *De Nobel v. Vitro Corp.,* 885 F.2d at 1186. Both sides refer to the arbitrary and capricious test and have not addressed the alternative choices for the deferential standard. In the circumstances of this case, the court believes the most appropriate standard is abuse of discretion with review focusing on whether the Retirement Committee's interpretation of section 4.7 is reasonable.

■ "[T]he trustee's interpretation will not be disturbed if reasonable." *Bruch,* 489 U.S. at ——, 109 S.Ct. at 954, 103 L.Ed.2d at 93. The Fourth Circuit in *De Nobel* identified several straightforward factors from pre-*Bruch* decisions for analyzing the reasonableness of an interpretation of the plan by its administrator:

We must give due consideration, for example, to whether the administrators' interpretation is consistent with the "goals of the plan," (citation omitted); whether it might render some language in the plan documents "meaningless," (citation omitted), or internally inconsistent, (citation omitted); whether the challenged interpretation is at odds with the procedural and substantive requirements of ERISA itself, (citation omitted); whether the provisions at issue have been applied "consistently," (citation omitted); and of course whether the fiduciaries' interpretation is "contrary to the clear language of the [p]lan." (citation omitted).

885 F.2d at 1188. There may be more than one reasonable interpretation of a plan provision, and the administrator's interpreta-

tion need not be the most reasonable. *De Nobel*, 885 F.2d at 1188–1191. Because of the deference given an administrator's reasonable reading of a plan, a court may not replace that reading with its own. *De Nobel*, 885 F.2d at 1188.

The legality of workers' compensation setoff provisions, such as section 4.7 of the Plan, was upheld by the Supreme Court in *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). The employees there argued that the setoff constituted an unlawful forfeiture of vested benefits. The Court observed that ERISA left the content or level of the benefits to the parties to create. 451 U.S. at 511, 101 S.Ct. at 1900. The Court treated this benefit integration provision as affecting only the level of benefits, and therefore, was a matter Congress left to the parties' discretion. The Supreme Court explained the purpose behind these integration provisions as follows:

> Congress did not prohibit "integration," a calculation practice under which benefit levels are determined by combining pension funds with other income streams available to the retired employees. Through integration, each income stream contributes for calculation purposes to the total benefit pool to be distributed to all the retired employees, even if the nonpension funds are available only to a subgroup of the employees. The pension funds are thus integrated with the funds from other income maintenance programs, such as Social Security, and the pension benefit level is determined on the basis of the entire pool of funds.... In addition, integration allows the employer to attain the selected pension level by drawing on the other resources, which like Social Security, also depend on employer contributions.

451 U.S. at 514, 101 S.Ct. at 1901. The Court found integration of pension benefits permissible where the employer contributes to the other benefit funds, the other funds are set up for general public use, and the benefits provided thereunder correspond in kind to the pension benefits. 451 U.S. at 520, 101 S.Ct. at 1904.

The *Alessi* decision is critical in determining the reasonableness of the Retirement Committee's interpretation of section 4.7. First, it establishes that the challenged interpretation is not contrary to ERISA law. Second, it recognizes the legitimate purpose to setoff provisions is to enable the employer to reduce its cost for the pension plan by combining pension funds with other available income sources to maintain the established benefit level of retired or disabled employees. Finally, it allows a setoff of only those benefit funds to which the employer "contributes." 451 U.S. at 520, 101 S.Ct. at 1904. The Supreme Court in *Alessi* spoke only of an employer's contribution to the other fund and did not require a dollar for dollar exchange of the employer's contribution and the corresponding reduction in pension payments. The Retirement Committee did not act unreasonably in construing section 4.7 consistent with the lawful objective of setoff provisions.

Plaintiff has not shown that the Retirement Committee's construction would render other language in the Plan meaningless or internally inconsistent or that this construction of section 4.7 has been applied inconsistently. The focus of plaintiff's argument is that the interpretation at issue is simply contrary to the plain and clear language of the Plan. Plaintiff offers an interpretation of section 4.7, which in this court's view, is more reasonable and more justified under the Plan's actual wording than that propounded by the Retirement Committee. Yet, the court agrees with defendants that the language of section 4.7 is not so plain as to make the Committee's interpretation of it unreasonable.

"Any amount paid to or on behalf of any Employee ... on account of injury ... causing disability in the nature of a permanent disability for which the Company ... is liable pursuant to Worker's Compensation ... laws ... shall be deducted from or charged against the amount of any pension payable...." Even though this provision does not expressly state that the Company must have actually paid the workers' compensation award, plaintiff chooses to read it as saying as much in its use of "liable." The Retirement Committee construes "lia-

ble" as including its secondary liability for the award under K.S.A. 44–569(c) and its indirect liability through its annual contributions to the Fund. Although this construction does strain somewhat the more typical legal meaning of "liable," it is still a rational and reasonable meaning particularly when considered in light of the general purpose and requirements of workers' compensation setoff provisions. Defendants correctly point out that their construction avoids the arbitrary discrimination which would result if a higher level of benefits were given to certain employees only because their compensable injuries were caused or contributed to by a pre-existing physical injury or impairment.

Case law from other jurisdictions also supports the defendants' position. In *Horace v. Auto Specialties Mfg. Co.*, 663 F.Supp. 54 (W.D.Mich.1987), the pension plan provided for a deduction to the extent that such other benefits "have been provided by premiums, taxes, or other payments paid by or at the expense of the Company." The court found that it was not unreasonable for the administrator to construe the plan as permitting a deduction of pension benefits in the amount of the workers' compensation benefits even though the Company had not incurred that expense because the State of Michigan had later reimbursed it for the workers' compensation award. In *Salyers v. Allied Corp.*, 642 F.Supp. 442 (E.D.Ky.1986), the plan contained language —"for which the Company is liable"—nearly identical to section 4.7 of the Coleman Plan. With little explanation for its conclusion, the court found that the administrator did not act arbitrarily or capriciously in setting off the entire workers' compensation award though the employer was only directly "liable" for 25% of the award.

The question of interpreting section 4.7 is a close one. The court, however, cannot say that the Retirement Committee's interpretation is inconsistent with the plain language of the Plan. To remain faithful to the standard of "reasonableness," this court must defer to any "reasonable" construction of the Plan by the Committee which rationally furthers the purpose of that provision. The court is compelled to grant the defendants' motion.

IT IS THEREFORE ORDERED that the plaintiff's motion for summary judgment is denied, and the defendants' motion for summary judgment is granted.