874 F.2d 541
 Andy L. LAKEY, Jr.; L'Wana J. Rush; George E. Rush;
Robert W. Harshner; James A. McCance; Floyd N. Harris;
Robert J. Walz; B.L. Johnston; Vida S. Reader on behalf of
themselves and all persons similarly situated, Appellants,
v.
REMINGTON ARMS COMPANY, INC., Appellee.
REMINGTON ARMS COMPANY, INC.
v.
UNITED STATES of America and John O. Marsh, Jr., Secretary
of the Army.
Andy L. LAKEY, Jr.; L'Wana J. Rush; George E. Rush;
Robert W. Harshner; James A. McCance; Floyd N. Harris;
Robert J. Walz; B.L. Johnston; Vida S. Reader on behalf of
themselves and all persons similarly situated,
v.
REMINGTON ARMS COMPANY, INC.
REMINGTON ARMS COMPANY, INC., Appellant,
v.
UNITED STATES of America and John O. Marsh, Jr., Secretary
of the Army, Appellees.
 Nos. 88-1860, 88-2058.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 15, 1988.
Decided May 10, 1989.
Rehearing and Rehearing En Banc Denied in No. 88-1860 June 19, 1989.
 
 Larry M. Schumaker, Kansas City, Mo., for appellants.
 Jack W.R. Headley, Kansas City, Mo., for appellee.
 Before BOWMAN and MAGILL, Circuit Judges, and HANSON,* Senior District Judge.
 MAGILL, Circuit Judge.
 
 
 1
 The question before us is whether the district court[1] was correct in granting the motion of Remington Arms Company, Inc. (RAC) for summary judgment.[2] This litigation arose from an employer's refusal to grant its employees severance pay when it was immediately succeeded by another federal contractor. The employees did not suffer a lack of work as a result of the change in management. Under new standards recently enunciated by the United States Supreme Court in Firestone Tire and Rubber Co. v. Bruch, --- U.S. ----, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), we affirm.
 
 I.
 
 2
 Appellants contend that they were entitled to severance benefits when RAC, their former employer, terminated them en masse in 1985 after it lost its forty-five-year-old operating contract at the government-owned Lake City Army Ammunition Plant in Independence, Missouri. The Army had opened the contract to public bidding, and Olin Manufacturing Co. won the bid.
 
 
 3
 RAC refused to pay severance benefits after terminating its Lake City employees on November 2, 1985. Basing its refusal on an interpretation of its basic severance pay policy (which was originally drafted and approved by the RAC Board of Directors in 1956), RAC informed its ex-employees that the policy could only be triggered by permanent termination due to "a period of unemployment."[3] Therefore, RAC reasoned, since Olin took over operations at Lake City immediately after RAC's contract expired and offered to rehire all of the ex-RAC employees on terms nearly identical to those under which they had worked for RAC, there was no "lack of work" and hence severance benefits were not warranted. The ex-RAC employees, convinced that the 1984 interpretation was a departure from RAC's earlier construction and application of the policy, protested that RAC's refusal to pay them severance benefits violated the Employee Retirement Income Security Act of 1974 (ERISA). 88 Stat. 829, as amended, 29 U.S.C. Secs. 1001, et seq.
 
 
 4
 On October 8, 1986, the Lake City employees filed a class action against RAC in the United States District Court for the Western District of Missouri. They sought a declaratory judgment that RAC's refusal to grant severance benefits violated Sec. 1132(a)(1)(B) of ERISA. RAC moved for summary judgment. The district court granted the motion, holding that under Sec. 1132(a)(1)(B), RAC's interpretation of the severance pay policy was lawful because it was not arbitrary and capricious.
 
 
 5
 On appeal, the ex-RAC employees argue that (1) the district court erred in analyzing the ERISA claim under the arbitrary and capricious standard of review (instead of reviewing the dispute de novo), and (2) even if arbitrary and capricious review were proper, the district court erred in finding that the refusal was not arbitrary and capricious.
 
 
 6
 The appellants claim that in a 1960 policy guideline document, RAC indicated that terminated employees would be paid severance benefits regardless of whether they immediately obtained comparable employment elsewhere. Appellants further claim that in 1969 when RAC sold its Chicago-based Mall Tool division, RAC paid severance benefits to terminated Mall Tool workers who were immediately rehired by a new employer. Therefore, appellants argue, RAC's refusal to do the same for them in 1985 was inconsistent. In sum, appellants contend that RAC's interpretation of the severance pay policy in 1984 was a pretext. In their view, the interpretation was not a reasonable attempt to construe a longstanding policy; rather, it was an attempt to shield RAC from having to disburse up to $15 million in severance benefits if it lost the bidding competition for the government contract to operate the Lake City plant.
 
 
 7
 RAC counters that (1) its severance pay policy has been consistent: it denies benefits where terminated workers suffer no lack of work, and (2) the "pretext" argument is specious because the Army, as owner of the Lake City plant, is obligated by a pass-through provision in the federal contract to reimburse the contractor for all severance benefits. Therefore, RAC asserts that it never faced the danger of having to pay $15 million in out-of-pocket funds. As for the argument that the payments of benefits to the Mall Tool employees was inconsistent, RAC states that the Mall Tool incident, which involved a sale, not a loss of a contract through bidding, was not a "similar situation" to the instant action, so it created no precedent that RAC was obliged to follow when dealing with the Lake City employees. RAC emphasizes that "[t]he district court rejected appellants' inconsistency argument." See Lakey v. RAC, Inc., No. 88-1141-CV-W-6, slip op. at 23, 1988 WL 36334 (W.D.Mo. April 13, 1988).
 
 II.
 
 8
 The first issue we examine is the appropriate standard of judicial review of benefit determinations by fiduciaries or plan administrators like RAC under ERISA. The district court followed circuit law and applied the arbitrary and capricious standard. The Supreme Court recently explicated a new "trust law" based standard in Firestone Tire and Rubber Co. v. Bruch, --- U.S. ----, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).
 
 
 9
 Bruch stems from the sale of the plastics division of the Firestone Rubber and Tire Company to Occidental Petroleum Company. Occidental rehired, without interruption and at the same rates of pay, most of the employees Firestone had terminated upon the consummation of the sale. Six Firestone employees rehired by Occidental sought severance benefits from Firestone pursuant to Firestone's termination pay plan. Firestone refused to pay the benefits, explaining that the plan was activated by terminations caused by a "reduction in the work force," not by a sale of a division. The employees filed a class action under Sec. 1132(a)(1) of ERISA (the same provision relied upon by appellants in the instant action). Section 1132(a)(1) provides that a "civil action may be brought * * * by a participant or beneficiary [of a covered plan] * * * (B) to recover benefits due to him under the terms of his plan."
 
 
 10
 The district court granted summary judgment for Firestone, holding that Firestone had satisfied its fiduciary duty under ERISA because its refusal to pay termination benefits was not arbitrary or capricious. Bruch v. Firestone, 640 F.Supp. 519 (E.D.Pa.1986). The Court of Appeals for the Third Circuit reversed. Bruch v. Firestone, 828 F.2d 134 (3d Cir.1987). While it acknowledged that most federal courts have reviewed the denial of benefits by ERISA fiduciaries and administrators under the arbitrary and capricious standard, it also pointed out that the standard has been softened in cases where fiduciaries and administrators had some bias or adverse interest. In view of the softened standard, the Court of Appeals held that where the employer is itself the fiduciary or administrator of a benefit plan, its decision to deny benefits should be subject to full de novo review, with no presumption that the fiduciary or administrator acted reasonably. The court reasoned that an employer in that situation cannot assure its impartiality, so deference to its decisionmaking is unwarranted.
 
 
 11
 The Supreme Court granted certiorari to resolve the conflict among the courts of appeals as to the appropriate standard of judicial review of benefit determinations by fiduciaries or plan administrators under Sec. 1132(a)(1)(B) of ERISA. Firestone v. Bruch, --- U.S. ----, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).
 
 
 12
 The Court began by pointing out that "ERISA does not set out the appropriate standard of review for actions under Sec. 1132(a)(1)(B)" and that federal courts have often filled the gap in the statute by applying the arbitrary and capricious standard developed under Sec. 302(c) of the Labor Management Relations Act (LMRA). Id., 109 S.Ct. at 953. Firestone argued that Congress intended the LMRA standard to be applied in ERISA cases. The Court disagreed and concluded, inter alia, that "the wholesale importation of the arbitrary and capricious standard into ERISA is unwarranted." Id. The Court stated that in order to determine the proper standard of judicial review in ERISA cases, it is necessary to use principles taken from the law of trusts. After pointing out that "trust law makes a deferential standard appropriate when a trustee exercises discretionary powers," the Court concluded that because Firestone possessed "no powers to construe uncertain terms," it was not entitled to the deference inherent in the arbitrary and capricious standard. Id. at 956.
 
 
 13
 The Court then held that "a denial of benefits challenged under Sec. 1132(a)(1)(B) of ERISA is to be reviewed under a de novo standard unless the benefit plan[4] gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id.
 
 III.
 
 14
 Our review of the instant action in light of Bruch leads us to conclude that the district court was correct to grant RAC's motion for summary judgment. Bruch indicates that the threshold issue in an analysis of benefit determinations by fiduciaries or plan administrators under ERISA is whether the fiduciary or plan administrator had discretionary power to construe uncertain terms in the benefit plan. A thorough examination of the plan convinces us that RAC had such discretionary power. On page three of the RAC severance pay policy document, RAC "attempts to interpret the more usual situations that may arise in the application of the principles of the [severance pay] policy." Defendant's Exhibit 1. The district court found discretionary power: "Plaintiffs in this action * * * applied for but were denied severance pay pursuant to interpretations of the plant's severance pay policy made by the Lake City plant manager * * *." Furthermore, appellants refer in their brief to RAC's "interpretation of its severance benefit plan," appellants' brief at 11, arguing that the interpretation was a "bad faith effort" to avoid paying benefits to the employees rehired by Olin.
 
 
 15
 If a court determines that a fiduciary or administrator of a benefit plan had discretionary power to construe its terms, Justice O'Connor explains in Bruch, the fiduciary or administrator's benefit determination is to be reviewed under the arbitrary and capricious standard. Therefore, since RAC had power to construe the uncertain terms in its benefit plan, the district court was correct to find RAC's decision not to grant severance benefits lawful under ERISA so long as the decision was not arbitrary and capricious.
 
 
 16
 This court has frequently held that when terminated employees are immediately rehired by a departing corporation's successor under terms that are comparable to those received from their initial employer, the employees are not entitled to severance benefits. See Agee v. Armour Foods Co., 834 F.2d 144 (8th Cir.1987) (employees laid off by initial employer and immediately rehired by employer's successor are not entitled to severance pay); Acton v. Tosco, 815 F.2d 1161 (8th Cir.1986) (same); Pabst Brewing Co. v. Anger, 610 F.Supp. 214 (D.Minn.1985), aff'd, 784 F.2d 338 (8th Cir.1986) (same).
 
 
 17
 In the instant action, RAC ceased operations at Lake City on November 2, 1985, and Olin began its operations on the next day. None of the terminated RAC employees missed even a day of work as a result of RAC's losing the contract and terminating them.
 
 
 18
 The district court concluded that RAC did not violate ERISA when it refused to grant severance pay to its ex-employees because the employees suffered no lack of work. Our review of the record persuades us that this conclusion was correct. Paragraph four of RAC's severance pay policy (the policy is entitled "Treatment to be Accorded Employees Terminated on Account of Lack of Work " (emphasis added)) reads as follows:
 
 
 19
 4. Severance pay payments may not be made under any conditions unless and until:
 
 
 20
 a. the employee is terminated from the permanent roll of the company, and
 
 
 21
 b. the termination is caused by lack of work.
 
 
 22
 Defendant's Exhibit 1.
 
 
 23
 The terms "terminated" and "lack of work" are underlined in the document, emphasizing that they are the two factors that must be present to activate RAC's severance pay policy. The language in the policy document requiring a lack of work as a prerequisite to severance pay is clear. We conclude that the district court did not err when it found that the immediate rehiring of RAC's ex-employees by Olin negated RAC's obligation to pay severance benefits.
 
 
 24
 Because the change in employer from RAC to Olin caused the employees no lack of work, severance benefits, if granted, would simply have been a windfall for the newly rehired employees. See Acton v. Tosco Corp., 815 F.2d at 1163 (quoting Sly v. P.R. Mallory & Co., Inc., 712 F.2d 1209 (7th Cir.1983)). In light of Pabst Brewing, Acton, Agee, and Sly, we are persuaded that RAC's refusal to pay severance benefits to its ex-employees at Lake City was not arbitrary and capricious. Therefore, the district court, having determined that RAC's refusal to pay severance benefits to its terminated Lake City employees was fair and reasonable, consistent with prior interpretations, and not a violation of ERISA causing the ex-employees to suffer substantive harm, was correct to conclude that RAC's refusal to pay severance benefits did not violate Sec. 1132(a)(1)(B) of ERISA. We affirm.
 
 
 25
 HANSON, Senior District Judge, dissenting.
 
 
 26
 The issue in this case is whether RAC's determination that plaintiffs were not entitled to severance benefits violated ERISA. The nine named plaintiffs consist of seven RAC employees who took employment with Olin immediately after their termination by RAC, and two employees who chose not to take such employment. All employees, including those who did not go on to work for Olin, were denied severance benefits.[1] RAC denied the benefits under plan language which guarantees severance benefits to "employees terminated for lack of work" contending that employees were not terminated for "lack of work" because Olin offered to hire all of them when it took over the plant. Plaintiffs contend that the lack or work requirement referred to "lack of work" with Remington only. In support of their position appellants offer a document prepared by RAC for Lake City employees which specifies that severance benefits will be granted even "[i]f the Company is successful in obtaining employment for a laid-off employee with another company, and there is no lost time between jobs".
 
 
 27
 Firestone v. Bruch dictates that "a denial of benefits challenged under Sec. 1132(a)(1)(B) of ERISA is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." --- U.S. ----, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). In other words, unless the plan language specifies otherwise, courts should construe any disputed language "without deferring to either parties interpretation." Id., 109 S.Ct. at 955.
 
 
 28
 There is nothing in any of the documents constituting the formal severance pay policy which, as a matter of contract or trust law, requires deference to RAC's interpretation of the plan language at issue. The majority's conclusion to the contrary rests entirely on one sentence from a Remington's Service Manual which states only that "[t]he following material attempts to interpret the more usual situations that may arise in the application of the principles of the formal policy." This is insufficient, under the standards enunciated in Bruch, to change the status of the parties on this issue. The sentence does nothing more than lead into a discussion of possible scenarios under which severance pay would be awardable. It does not change the balance between the parties so as to grant additional discretion to the plan administrator.
 
 
 29
 The majority's suggestions that the district court made a finding on this issue and that plaintiff's have conceded this issue are also at odds with the record. The statement by the district court that "[p]laintiffs in this action * * * applied for but were denied severance pay pursuant to interpretations of the plant's severance pay policy made by the Lake City plant manager" was not a finding of discretionary power. Instead, when read in context of the opinion, it is clear that it is nothing more than a statement identifying who the plaintiffs were. See Op. at 542. Similarly, the majority's suggestion that appellants have conceded this issue in their brief by arguing that RAC's interpretation of the plan was a "bad faith effort" is entirely without foundation. A substantial portion of appellants' briefs are devoted to the assertion that there should be a de novo review of RAC's interpretations. The "bad faith" assertion is simply an alternative argument offered by appellants to be considered by this court should it decide to review RAC's actions under the arbitrary and capricious standard.
 
 
 30
 Thus, I believe the proper standard of review of the RAC's actions must be the de novo standard embraced by Bruch. The district court, however, specifically predicated its finding that RAC had not violated ERISA, on the understanding that its function in reviewing RAC's actions was only to determine whether RAC had acted arbitrarily and capriciously in denying the benefits. Accordingly, I believe the case should be remanded to the district court for further proceedings under the correct standard. I take no position on the merits of plaintiffs' or defendant's interpretation of the plan language.
 
 
 
 *
 THE HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation
 
 
 [1]
 The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri
 
 
 [2]
 Summary judgment was granted in the district court before the plaintiff class was certified, so the appellants in the instant action are the nine representative or "name" plaintiffs only
 
 
 [3]
 In a bulletin from RAC/Lake City Plant Manager R. J. Iverson (dated October 17, 1984) to all Lake City employees, the company explained that:
 As outlined in a previous bulletin to all employees, the issue of severance pay in the event we are unsuccessful in our bid for the contract was being studied. That study is now complete and our position is as follows:
 The intent of our severance pay policy is to provide interim income to an individual, during a period of unemployment, before a new job is found. In granting severance pay, therefore, a basic condition is that a job no longer exists. In the case of a new contractor at Lake City, on the other hand, employment for most employees would be continuous. Therefore, our intent would be to not pay severance pay to those employees who receive an offer of employment from a new contractor. Any employees not offered employment by a new contractor would be eligible for severance pay.
 Defendant's Exhibit 18.
 
 
 [4]
 This holding applies whether a plan is funded or unfunded. Firestone v. Bruch, 109 S.Ct. at 956
 
 
 [1]
 The majority's conclusion that "[n]one of the terminated RAC employees missed even a day of work as a result of RAC's * * * terminating them" is at odds with the district court's recognition that two plaintiffs did suffer unemployment when RAC ceased operation. Op. at 545