777 F.Supp. 750 (1991)
John G. SMITH, et al., Plaintiffs,
v.
GENELCO, INC., et al., Defendants.
No. 90-1714C(1).
United States District Court, E.D. Missouri, E.D.
June 10, 1991.
*751 Nicholas Higgins, Whaley, Higgins & Associates, Clayton, Mo., for plaintiffs.
Timothy Kellett, Armstrong, Teasdale, Schlafly, Davis & Dicus, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, District Judge.
Plaintiffs John Smith, Linda Allen (Smith's legal guardian), St. Louis University, and SSM Health Care, brought this claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., and the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1161 et seq. (West Supp.1991), seeking to recover $122,140.74 in health insurance benefits, and to recover statutory damages under ERISA for defendants' alleged failure to provide plaintiff John Smith with required information under COBRA and ERISA. The case is before the Court on plaintiffs' and defendants' cross motions for summary judgment.

I. BACKGROUND
Defendant Paulo Products Company ("Paulo") is a corporation with its principal place of business located in the City of St. Louis. Plaintiff John G. Smith ("Smith") was employed by Paulo from September 8, 1988 through April 13, 1989. Smith voluntarily resigned his employment with Paulo in order to take another job.
At all relevant times during his employment with Paulo, Smith was a member in good standing of the International Brotherhood of Boilermakers and Iron Ship Building, Blacksmiths, Forgers and Helpers, Local No. 27, AFL-CIO (the "Union"). A collective bargaining agreement (the "Agreement") was in effect between Paulo and the Union at all times during Smith's employment. The Agreement stated that Paulo would provide a medical/employee benefits plan to the Union workers by paying the cost of the medical plan and by providing benefits to the Union employees equivalent to those provided by the medical/employee benefits plan currently in place for Paulo's non-union employees. The Agreement relevant to this action was in effect from January 13, 1986 to January 12, 1989, and was renewed, to be effective January 13, 1989 to January 12, 1992.
At all relevant times, Paulo sponsored the Paulo Products Company Group Health Care Plan (the "Plan") which was self-funded by Paulo. The Plan covered union and non-union employees. Defendant Genelco, Inc. ("Genelco"), provided administrative services on behalf of Paulo pursuant to a written agreement. At all relevant times, B. Franklin Rassieur, Jr. ("Rassieur") was the Administrator of the plan.
On July 3, 1989, nearly three months after Smith's last day in Paulo's employ, Smith was seriously injured in an automobile accident. Approximately three weeks after this accident, Sharon S. Nelson ("Nelson"), a Paulo employee and the benefits *752 administrator at Paulo, received a phone call from Smith's stepfather. He inquired whether there were any medical benefits available for Smith through Paulo's Plan under COBRA, which might pay for the medical treatment that had already been provided to Smith by the hospital plaintiffs, St. Louis University and SSM Health Care.
Through an administrative error, Nelson instructed Genelco to mail a notice to Smith stating that he was eligible to elect to continue his group health insurance coverage under the Plan because of the requirements of COBRA. Subsequently, premium payments were made on behalf of Smith to Genelco. When Rassieur learned of the foregoing, he determined that Smith had erroneously been offered COBRA coverage and notified Smith's guardian in writing of his decision.
Rassieur's decision was based upon his interpretation of the effective date of COBRA for group health plans maintained pursuant to a collective bargaining agreement. The Agreement discussed above was in effect on the date of COBRA's enactment, April 7, 1986. The Agreement was ratified on January 13, 1986, and did not expire until January 12, 1989. Rassieur interpreted COBRA to take effect and modify the Plan, as applied to Union employees under the Agreement, as of January 1, 1990, the first day of the first Plan year following January 12, 1989. Plaintiffs believe that COBRA took effect earlier, and that Smith was entitled to the option of continuing his coverage under the Plan, and defendants were obligated to timely provide him with notice of these rights under COBRA and ERISA.

II. SUMMARY JUDGMENT STANDARDS
In determining whether summary judgment should issue, the facts and inferences from these facts are viewed in the light most favorable to the non-moving party and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, however, the non-moving party may not rest on the allegations in its pleadings but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R.Civ.P. 56(e). See also 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2739 (1983).
Recently, the Supreme Court noted that: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to `secure the just, speedy and inexpensive determination of every action'." Celotex, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1). Thus, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S.Ct. at 1356. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no `genuine issue for trial'." Id. at 587, 106 S.Ct. at 1356. The Eighth Circuit has acknowledged that the "trilogy of recent Supreme Court opinions" demonstrates that the courts should be "more hospitable to summary judgments than in the past" and that a motion for summary judgment "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those cases that really do raise genuine issues of material fact." City of Mt. Pleasant, Iowa v. Associated Electric Cooperative, Inc., 838 F.2d 268, 273 (8th Cir.1988).

III. DISCUSSION

A. The Effective Date of COBRA
COBRA was enacted on April 7, 1986. Section 10002 of COBRA amended the ERISA statute, see Pub.L. 99-272 § 10002, *753 100 Stat. 82, 227, reprinted at 1986 U.S.Code Cong. & Ad.News, Vol. 1, at 227, and was codified at 29 U.S.C. § 1161 et seq. (West Supp.1991). Section 10002 manifests the intention of Congress to insure that employees once covered under an employer sponsored employee health care plan will be afforded the option to maintain coverage until such time as they come under the coverage of another employer's medical benefits plan.
Section 10002(d) of COBRA, entitled "Effective Dates" states:
(1) General Rule.  The Amendments made by this section shall apply to plan years beginning on or after July 1, 1986.
(2) Special Rule for Collective Bargaining Agreements.  In the case of a group health plan maintained pursuant to one or more collective bargaining agreements between employee representatives and one or more employers ratified before the date of enactment of the enactment of this Act [April 7, 1986], the amendments made by this section shall not apply to plan years beginning before the later of 
(A) the date on which the last of the collective bargaining agreements relating to the plan terminates (determined without regard to any extension thereof agreed to after the date of the enactment of this Act), or
(B) January 1, 1987.
For purposes of subparagraph (A), any plan amendment made pursuant to a collective bargaining agreement relating to the plan which amends the plan solely to conform to any requirement added by this section shall not be treated as a termination of such collective bargaining agreement.
100 Stat. 231-232; 1986 U.S.Code Cong. & Ad.News, Vol. 1, at 231-232; See also 29 U.S.C. § 1161, Hist. & Stat.Notes (West Supp.1991).
Defendants have interpreted this section to mean that COBRA does not apply to Paulo's Union employees covered under the Plan by the terms of the Agreement, until January 1, 1990. This calculation is based on the fact that the collective bargaining Agreement was ratified on January 13, 1986, and therefore was in effect on the date of enactment of COBRA, April 7, 1986. The Agreement continued in effect until January 12, 1989. The Plan under the Agreement ran from calendar year to calendar year, so the first day of the Plan year following the termination of the collective bargaining Agreement was January 1, 1990, and therefore it was on this date that COBRA fully applied to both Union and non-union employees under the Paulo Plan, requiring defendants to afford Union employees the option of maintaining health coverage under the Plan.
The Court agrees with defendants' interpretation of the effective date of COBRA in this matter. Plaintiff Smith was not employed at Paulo and was not covered by the Plan at the time that COBRA became effective as pertains to Union employees covered by the Paulo Plan. Plaintiffs seek to enforce the COBRA amendments to ERISA against defendants, but these amendments were not yet in force when plaintiff Smith left Paulo in April 1989 in order to seek other employment.

B. Plaintiffs' Cause of Action
The Court has determined that plaintiffs have no cause of action under the COBRA amendments to ERISA because these amendments had not yet taken effect as to Paulo's Union employees covered by the group health plan maintained pursuant to its collective bargaining agreement with Smith's Union. The Court does not reach the issue of the proper standard of review of the decision of the Plan's Administrator, Rassieur, to deny plaintiff Smith coverage under the Plan, because the Court finds that this decision was fully supported by Section 10002(d) of COBRA, and therefore survives scrutiny under an arbitrary and capricious standard of review, See Lakey v. Remington Arms Co., 874 F.2d 541 (8th Cir.1989), as well as under a de novo review. Nor does the Court reach the issue of whether plaintiffs have exhausted their administrative remedies as required by ERISA, in that the Court has chosen to *754 proceed directly to the merits for the disposition of this matter.
Plaintiffs further argue that defendants waived the provisions under Section 10002(d) of COBRA setting forth the effective date of the COBRA amendments by amending the terms of the Paulo Plan so as to reflect the COBRA amendments to ERISA. The Court finds nothing of merit in this argument. The amendment in question, Amendment 7 to Article 3 of the Plan, See Deft's Exh. A1, Art. 3, Section D and Amendment 7, does not state that all Union employees of Paulo will be treated the same as non-union employees, and will be afforded the right to continuation of coverage at the same time as non-union employees. Furthermore, the Administrator has uniformly interpreted and applied the Plan so as not to extend continuation of coverage to Union employees in Smith's situation, who left or were terminated from Paulo's employ before the effective date of the COBRA amendments. See Rassieur Affidavit and Rassieur Supp. Affidavit.
Plaintiffs also argue that Nelson's administrative error in sending Smith an election form for the continuation of coverage under the Plan somehow worked as an offer by Paulo to continue coverage for Smith's benefit, which Smith could "accept" by executing this mistakenly mailed election form. The Court draws guidance from the opinion of the Court of Appeals for the Fifth Circuit in Brock v. Primedica, Inc., 904 F.2d 295 (5th Cir.1990), in finding that such error cannot be construed as waiving, modifying or creating rights that have not been extended under the terms of the employee health care plan as it has been interpreted by its administrator. Smith was ineligible to receive continuation of coverage under this group health plan maintained pursuant to the collective bargaining agreement, and it was purely an administrative error that led plaintiffs to believe that Smith could elect to continue his coverage. This error will not be construed by the Court as an offer which Smith could accept to bind over coverage under Paulo's Plan.

IV. CONCLUSION
Therefore, for the reasons stated above, the Court grants defendants' cross motion for summary judgment and denies plaintiffs' cross motion for summary judgment. Judgment be and is entered in favor of defendants and against plaintiffs on Counts I and II of plaintiffs' amended petition.