James **ERICKSON** and Kathleen **Erickson**, parents and natural guardians of **Christopher Erickson**, a minor, Plaintiffs,

v.

**AETNA LIFE INSURANCE COMPANY**, Defendant.

Civ. No. 4–90–666.

United States District Court,
D. Minnesota,
Fourth Division.

Sept. 25, 1991.

Wilbur F. Dorn, Jr., and Dorn & Edwards, Ltd., Anoka, Minn., for plaintiffs.

Paula Tamar Weseman, and Faegre & Benson, Minneapolis, Minn., for defendant.

## ORDER

DOTY, Judge.

This matter is before the court on defendant's and plaintiffs' cross-motions for

summary judgment. Based on the file, record and proceedings herein and for the reasons stated below, defendant's motion will be granted and plaintiffs' motion denied.

## BACKGROUND

Plaintiffs James and Kathleen Erickson ("plaintiffs"), parents and natural guardians of Christopher Erickson ("Christopher"), assert claims of breach of contract and estoppel [1] arising out of defendant's ("Aetna") refusal to pay Christopher's health insurance claim. On December 25, 1984, Christopher, then age 12, suffered a severe head trauma injury in an ATV accident. Since the accident, Christopher has been unable to feed himself, communicate, move about, dress, wash or otherwise assist himself. Christopher is fed through a gastrostomy tube and has a trachea tube to help him breathe. He receives physical and occupational therapy and anti-seizure medication on a daily basis.

Christopher has been institutionalized since the accident. He was first placed in licensed medical institutions, the Gillette Children's Hospital in St. Paul, Minnesota from 1985 to 1986, and then in the Bethesda Lutheran Hospital in St. Paul, Minnesota from 1986 to 1988. In August 1988, Christopher's parents requested that Christopher be transferred to the New Medico Treatment Facility ("New Medico") in Waterford, Wisconsin, in order to take advantage of New Medico's specialization in head trauma injuries. New Medico is not a hospital but provides advanced levels of therapy for its patients. Aetna agreed to allow transfer of Christopher to New Medico and paid for the daily care there pursuant to an extra-contractual agreement between the Ericksons, Aetna and Connecticut Business & Industry Association (CBIA), the policy holder.[2] *See* Keegan Deposition at 45–46.

The agreement provided that Aetna could terminate it at any time on thirty days notice.

Aetna has paid for Christopher's care since 1987, when it took over the liabilities of a previous insurer. Aetna provided health insurance coverage to Christopher pursuant to the terms of a group policy of Erickson Metals of Minnesota, the employer of his father James Erickson. There is no dispute that the insurance policy qualifies as an employee benefit plan within the meaning of the Employee Retirement and Income Security Act (ERISA), 29 U.S.C. § 1002(1).

In December 1989, plaintiffs wanted to move Christopher to a location closer to their Anoka, Minnesota residence. After evaluating several institutions, plaintiffs transferred Christopher to the Trevilla Nursing Home ("Trevilla") in Golden Valley, Minnesota. Trevilla is not a hospital but provides advanced levels of therapy for its patients. At that time, however, Christopher's ICM file came up for Aetna's review. Beatrice Keegan, a registered nurse and Aetna's employee, reviewed Christopher's progress reports and determined that Christopher's care had become "custodial." Because the insurance policy did not cover "custodial care," Keegan determined that Aetna no longer was responsible for Christopher's daily expenses, regardless of whether Christopher resided at New Medico or Trevilla, and terminated the extra-contractual payment agreement effective March 5, 1990.

Plaintiffs brought this lawsuit in state court in May 1990, seeking to have the parties' rights adjudicated under the Uniform Declaratory Judgment Act. Minn. Stat.Ann. Ch. 555 (1988). Aetna removed the case to federal court. Plaintiffs, relying on state law, claim that the custodial care clause in the policy is vague and am-

---

1. Plaintiffs raised the estoppel claim during oral arguments.

2. Aetna made the extra-contractual agreement pursuant to its Individual Case Management (ICM) program. The ICM program identifies alternatives to long-term hospitalization in catastrophic cases to ensure that patients receive appropriate and cost effective care. Aetna found that placing Christopher in the ICM program was in Christopher's best medical interest and approved his transfer to New Medico. Because New Medico is a nursing home and nursing home care is not covered under Aetna's policy, Aetna agreed to pay for the care pursuant to the extra-contractual agreement.

biguous and that the termination of daily care coverage was a breach of contract. Plaintiffs also claim that Aetna's decision was arbitrary and capricious and in violation of ERISA. In the alternative, plaintiffs claim that Aetna should be estopped from denying responsibility for the costs of Christopher's care. Plaintiffs make claim for the costs of daily care which have been incurred and those that will be incurred in the future. Plaintiffs move for summary judgment on each of their claims and allegations. Aetna claims that ERISA is the sole body of law under which to adjudicate the parties' rights and also moves for summary judgment.

## DISCUSSION

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct.

at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53. With this standard at hand, the court will consider the cross-motions for summary judgment.

### A. *State Law Claims*

In their briefs, plaintiffs argued that ERISA did not completely preempt state common law and statutory remedies in adjudicating disputes arising out of employee benefit plans. Plaintiffs claimed that the insurance contract was ambiguous and should be construed against Aetna, and that Aetna breached the insurance contract. During oral arguments, however, plaintiffs agreed with Aetna that ERISA preempts plaintiffs' state law claims. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987); *Brewer v. Lincoln National Life Ins. Co.*, 921 F.2d 150, 153–54 (8th Cir.1990); *In re Life Ins. Co. of North America*, 857 F.2d 1190, 1193–94 (8th Cir. 1988). Because the parties now agree on the applicable law, the court grants Aetna's motion for summary judgment and dismisses plaintiffs' state law causes of action with prejudice.

### B. *Standard of Review Under ERISA*

■ The United States Supreme Court established the standard of review applicable to ERISA benefit claims in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In *Firestone*, the Supreme Court held that:

[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibil-

ity for benefits or to construe the terms of the plan.

*Id.* at 115, 109 S.Ct. at 956. If the plan grants the administrator the discretion to construe the terms of the plan, an arbitrary and capricious standard applies. *See id.* at 111–12, 109 S.Ct. at 954–55; *see also Lakey v. Remington Arms Co., Inc.*, 874 F.2d 541, 544–45 (8th Cir.1989). Therefore, the threshold issue in reviewing ERISA benefit cases is to determine whether the policy grants the administrator discretion to construe uncertain terms. *See Lakey*, 874 F.2d at 544.

In *Lakey*, the Eighth Circuit determined that an ERISA plan gave the administrator discretion to construe disputed terms based on the following provision of the plan:

> [The employer] attempts to interpret the more usual situations that may arise in the application of ... the ... policy.

*Id.* The Eighth Circuit then applied the arbitrary and capricious standard to review the administrator's actions. *Id.* at 544–45.

■ The policy in this case gives Aetna the discretion to determine whether care is "custodial" within the meaning of the insurance policy exclusion. The policy states:

> Coverage is not provided for the following charges:
> 8. Charges, as determined by Aetna, to be for custodial care.[3]

*See* Insurance Policy at 48. Therefore, the court will apply the arbitrary and capricious standard to the insurer's decision on the custodial care issue. *See Firestone Tire & Rubber Co.*, 489 U.S. at 111–12, 109 S.Ct. at 954–55; *Lakey*, 874 F.2d at 544.

■ Under the arbitrary and capricious standard, it is proper to uphold the insurer's interpretation of its policy if that interpretation is reasonable, regardless of whether it is the best interpretation possible. *See Simmons v. Diamond Shamrock Corp.*, 844 F.2d 517, 523 (8th Cir.1988). A decision is deemed reasonable if it is based on an evaluation of factors that make a reasonable connection between "the issue

to be decided, the evidence in the case, the text under consideration, and the conclusion reached." *Exbom v. Central States Health & Welfare Fund*, 900 F.2d 1138, 1143 (7th Cir.1990); *see also De Nobel v. Vitro Corp.*, 885 F.2d 1180, 1188 (4th Cir. 1989) (the court must uphold a reasonable interpretation even if it disagrees with the administrator's decision).

■ Based on the foregoing, the court finds that Aetna's termination of benefits was not arbitrary or capricious. First, Aetna's determination that Christopher was receiving custodial rather than medical care was reasonable. The policy defines custodial care as care that is provided primarily to assist the individual in the activities of daily living. *See* Insurance Policy at 5. Those activities include eating, dressing, grooming, voiding, and moving the extremities to maintain muscle condition.

While Christopher may have required acute medical care in the past, it is not unreasonable to label the care that he now requires as custodial. None of his daily care is so medically intensive that a registered nurse must perform it. *See* Nyhus Depo. at 7–19. Furthermore, an experienced registered nurse made the determination that Christopher's care has become custodial. *See* Keegan Affidavit at ¶¶ 1, 2. She reviewed his medical records and reports and discussed Christopher's condition with his medical case manager before making that determination. *Id.* at ¶ 8. Christopher's case manager confirmed the information in Christopher's medical records; Christopher was not showing any medically significant improvement at New Medico and was receiving custodial care. *See id.* The policy gives Aetna the discretion to determine whether care is "custodial," and ample facts exist to support that determination.

■ Second, the court finds that Aetna's decision to terminate Christopher's care was reasonable because the policy does not cover nursing home care. The insurance provision states that the plan pays a benefit equal to a specified percentage of cover-

---

**3.** The foreward to the insurance policy section describing medical expense coverage also states

that coverage is not provided for custodial care. *See* Insurance Policy at 5.

ed medical expenses. The policy then lists the types of medical expenses that are covered[4] and none include nursing home care. The "Covered Medical Expenses" provision does include "Hospital Expenses." The policy defines those expenses for in-patient care as:

Charges made by a hospital ... for board and room and other hospital services and supplies ... furnished to ... [a person] confined as full-time patient.

See Insurance Policy at 18. A "hospital" is defined as:

An institution which meets fully every one of the following tests:

It is primarily engaged in providing ... on an in-patient basis, facilities for the surgical and medical diagnosis, treatment and care of injured and sick persons under the supervision of the staff of physicians.

... it is not other than incidentally, a place ... for the aged ... or a nursing home.

Id. at 7. This provision does not cover Christopher's care because Trevilla is a nursing home, not a hospital. See Berglin Depo. at 4, 7–8. Trevilla is licensed as a skilled nursing facility and does not have any surgical facilities. Id. at 10. The facility does not provide a diagnosis of injured people. Id. It does not maintain a staff of physicians and its medical director spends only a few hours a week at the facility. Id. at 11. Residents who require hospital care are transferred to other facilities. Id. at 10.

Trevilla does not fit the definition of a "hospital" because it is not "primarily engaged in providing ... facilities for the surgical and medical diagnosis, treatment and care" of its patients "under the super-

vision of a staff of physicians." See Insurance Policy at 7.

Based on the foregoing, the court finds that Aetna's determination that Christopher was receiving custodial care, a type of care the policy does not cover, was reasonable. Likewise, Aetna's determination that Christopher was residing in a nursing home and that the policy does not cover nursing home expenses was reasonable. The court thus grants Aetna's motion for summary judgment and denies plaintiffs' motion for summary judgment.

### C. Estoppel

 At the hearing plaintiffs also argued that Aetna should be estopped from refusing to pay for Christopher's nursing home care. Plaintiffs contend that because Aetna paid for Christopher's care at New Medico, another nursing home, Aetna should also pay for Christopher's nursing home care at Trevilla. Aetna approved Christopher's transfer to New Medico pursuant to its ICM program.[5]

Aetna's policy did not cover Christopher's care at New Medico and Aetna entered into an extra-contractual agreement with CBIA to pay for Christopher's expenses at New Medico. The agreement provided that Aetna could terminate this agreement at any time on 30 days written notice, an option Aetna reasonably exercised on February 2, 1990, to take effect on March 5, 1990. Christopher's coverage under the insurance policy itself was not canceled.

This agreement may be characterized as either an extra-contractual provision outside ERISA, or as a written modification of the ERISA plan. Plaintiffs did not specify

---

4. The policy covers the following medical expenses: (1) Hospital Expenses; (2) Convalescent Facility Expenses; (3) Home Health Care Expenses; (4) Second Surgical Opinion Expenses; (5) Preoperative Testing; (6) Out-patient Surgical Expenses; (7) Birthing Center Expenses; (8) Hospice Care Expenses; (9) Generic Prescription Drug and Medicine Expenses; (10) Mail Order Drug and Medicine Expenses; (11) Hemodialysis Expenses; (12) Routine Physical Exams; (13) Preventive Health Care Services Expenses; (14) Other Medical Expenses (physician's charges, nursing charges for out-patient

nurse care only, prescription drugs, diagnostic tests, x-rays, medical equipment rental, anesthetics, artificial limbs and ambulance charges). See Insurance Policy at 18–35.

5. The ICM program identifies alternatives to long-term hospitalization in catastrophic cases to ensure that the patient receives appropriate and cost-effective care. Facilities that provide alternative care frequently are excluded from the terms of the insured's policy.

whether they based their claim for relief on common law or ERISA equitable estoppel. This ambiguity is of no consequence, however, because the court finds that the estoppel claim fails under either theory. Applying the principles of common law equitable estoppel to Aetna's actions, the court finds that Aetna complied with the terms of the extra-contractual agreement and gave 30 days written notice prior to terminating Christopher's care at New Medico. The court finds that Aetna did not misrepresent the terms of the extra-contractual provision or the consequences of terminating the provision to the plaintiffs, and plaintiffs did not detrimentally rely on Aetna's actions. Thus, plaintiffs' claim fails under common law equitable estoppel.

■ Any estoppel claim based on the insurance plan itself also fails. ERISA preempts all state common law claims relating to employee benefit plans, including equitable estoppel. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *National Cos. Health Plan v. St. Joseph Hosp.*, 929 F.2d 1558, 1571 (11th Cir.1991). ERISA, however, does permit a beneficiary to enforce a claim based on the federal common law of equitable estoppel where the claim arises from a written modification of an ERISA plan or an oral interpretation of ambiguous plan provisions. *National Cos. Health Plan*, 929 F.2d at 1572; *Kane v. Aetna Life Ins. Co.*, 893 F.2d 1283, 1285–86 (11th Cir.1990). Under *Kane*, a plaintiff may bring a federal common law equitable estoppel claim where: (1) the provisions of the plan at issue are ambiguous such that reasonable person could disagree as to their meaning or effect, and (2) representations are made to the employee involving a written modification or an oral interpretation of the plan. *Alday v. Container Corp. of America*, 906 F.2d 660, 666 (11th Cir.1990) (discussing *Kane*); *Kane*, 893 F.2d at 1286–87. A beneficiary must satisfy both conditions to have a federal common law equitable estoppel claim. *Alday*, 906 F.2d at 666. In the case at hand the court finds that the exclusion provision and the extra-contractual provision are not am-

biguous. Accordingly, plaintiffs' estoppel claim under ERISA also fails.

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendant's motion for summary judgment on plaintiffs' claim of breach of contract and estoppel is granted; and

2. Plaintiffs' motion for summary judgment is denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.