**Ellen BREMER, Plaintiff,**

v.

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, Defendant.**

**Civil No. 97–1119 (DSD/JMM).**

United States District Court, D. Minnesota.

Dec. 15, 1997.

Kent D. Rossi, Rossi, ReMine & Pegg, Owatonna, MN, for Plaintiff.

**1058**

Eric C. Tostrud, Lockridge, Grindal, Nauen & Holstein, Minneapolis, MN, for Defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on defendant's motion for summary judgment. Based on a review of the file and record,[1] the court grants defendant's motion.

## BACKGROUND

Most of the facts underlying this action are undisputed. Plaintiff Ellen Bremer began her employment with Brown Printing (hereafter "Brown") in Waseca, Minnesota, in August 1992. Plaintiff served as a bindery laborer, and her job involved lifting stacks of paper into binding machines. In April 1993, plaintiff began experiencing pain in her shoulders and upper back. She sought treatment from Dr. Reinhold Plate, her family physician, who diagnosed her with "probable fibromyalgia with chronic tendinitis in the shoulders and upper back." Exhibit 4 to Affidavit of Eric C. Tostrud (Docket No. 11) (hereafter "Affidavit of Defendant") at 208; Exhibit 4 to Affidavit of Kent D. Rossi (Docket No. 13) (hereafter "Affidavit of Plaintiff") at 208.[2] Plaintiff continued working at Brown until December 1993, at which time she stopped working due to complaints of persistent pain.

Brown's workers' compensation insurer selected Dr. Conrad Butwinick, a rheumatologist with experience treating fibromyalgia, to examine plaintiff. Dr. Butwinick concluded that plaintiff suffered from fibromyalgia, that this was not a work-related condition, and that plaintiff was disabled from performing her job at Brown. Exhibit 7 to Affidavits of Defendant and Plaintiff at 241. Plaintiff thereafter adopted Dr. Butwinick as her treating physician for her fibromyalgia condition.

Due to her inability to work, plaintiff filed a claim for long term disability benefits under Brown's long term disability plan (hereafter "the Plan"), administered by defendant Hartford Life and Accident Insurance Company. Plaintiff's eligibility was based on her being "totally disabled" as that term is defined in the Plan. For the first two years of her disability, "totally disabled" meant that plaintiff had to be "prevented by disability from doing all the material and substantial duties of [her] own occupation on a full time basis." Exhibit 1 to Affidavits of Defendant and Plaintiff at 307. To remain eligible for benefits under the Plan after the initial two-year period, plaintiff had to be "prevented by disability from doing any occupation or work for which [she is] or could become qualified by: (1) training; (2) education; or (3) experience." *Id.* Defendant paid benefits to plaintiff under the Plan for the initial two-year period of her disability, from September 1, 1994 to August 31, 1996.

To determine her eligibility for continued benefits after the initial two-year period, defendant arranged for plaintiff to undergo an independent medical examination with Dr. Kurt Zimmerman, another rheumatologist. Dr. Zimmerman concluded that plaintiff's symptoms were consistent with fibromyalgia, but that such symptoms were not "consistent with a claim of complete disability." Exhibit 9 to Affidavits of Defendant and Plaintiff at 134. Defendant also sought the opinion of Dr. Butwinick, who opined that plaintiff "remains disabled regarding her normal occupation, and there would have to be a very special occupation that would fit into her disability, and considering her training, education, and expertise, I am not certain what that would be." Exhibit 10 to Affidavits of Defendant and Plaintiff at 98. Finally, defendant obtained the opinion of one of its

---

1. A hearing on defendant's motion was scheduled for December 12, 1997 at 10:00 a.m. While defendant's counsel was present at this hearing, counsel for plaintiff failed to appear. The court waited a reasonable period of time before adjourning the hearing.

2. The parties have put before the court essentially the same record evidence, assembled in the same order in the affidavits of the parties.

internal reviewing physicians, who concluded that although plaintiff suffered from fibromyalgia, she was not totally disabled from any occupation. Exhibit 11 to Affidavits of Defendant and Plaintiff at 94. Defendant also conducted a transferable skills analysis to determine whether jobs existed for which plaintiff was qualified and which she could perform given her condition. This survey identified several jobs which defendant alleges plaintiff was qualified to perform and which accommodated plaintiff's physical restrictions.

Based on this evaluation, defendant sent plaintiff a letter on October 31, 1996, informing her that she was not eligible for long term disability benefits beyond the initial two-year eligibility period. Defendant's letter informed plaintiff of the basis of its decision and that plaintiff had the right to request reconsideration of defendant's decision or to appeal this initial determination. *See* Exhibit 13 to Affidavits of Defendant and Plaintiff. Plaintiff appealed defendant's initial determination. Defendant therefore sought the opinion of a fourth physician, Dr. Richard Brown, Chief of Medicine with the Baystate Medical Center in Springfield, Massachusetts. After reviewing plaintiff's records, Dr. Brown concluded that plaintiff did suffer from fibromyalgia, but that she was not "totally disabled from all occupations" and that "she would be able to work in positions that allow her to not do the types of repetitive activities that aggravate her complaints." Exhibit 15 to Affidavits of Defendant and Plaintiff. Based on this information, defendant affirmed its initial determination to deny plaintiff's claim for long term disability benefits beyond the initial two-year period, and after September 1, 1996 stopped making disability payments to plaintiff.

On April 4, 1997, plaintiff filed suit in Steele County District Court, alleging that defendant was obligated under the Plan to pay plaintiff $750 per month for the duration of her disability. As the state law claim alleged in the complaint is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (hereafter "ERISA") and falls within the scope of ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(1)(B), defendant removed this case to federal court on May 5, 1997. This motion for summary judgment followed.

## DISCUSSION

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which requires the trial court to enter judgment as a matter of law if there can be but one reasonable conclusion as to the verdict. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* at 248, 106 S.Ct. 2505. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252, 106 S.Ct. 2505. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. 2505.

On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. *Id.* at 250, 106 S.Ct. 2505. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue facts supporting its claim will be developed later or at trial. Rather the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, judgment as a matter of law should not be granted. *See*

*Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. If a plaintiff fails to support an essential element of a claim, however, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. With this standard at hand, the court turns to defendant's motion for summary judgment.

■■■■ Plaintiff and defendant agree that the court should review defendant's denial of long term disability benefits under the arbitrary and capricious standard of review,[3] as the Plan gives the defendant, the Plan administrator, discretionary authority to interpret the terms of the plan and to decide disputed eligibility questions.[4] *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (holding that a deferential standard of review is appropriate when an ERISA benefit plan "gives the administrator or fiduciary authority to determine eligibility for benefits or construe the terms of the plan."). There has been no showing of procedural irregularity to warrant departure from this standard.[5] *See Buttram v. Central States S.E. and S.W. Areas Health and Welfare Fund,* 76 F.3d 896, 899–901 (holding that for a heightened standard to apply, a plaintiff must show a procedural irregularity causing a plan trustee to breach a fiduciary duty to the plan's beneficiary). Thus, the court will uphold the administrator's determination if it is reasonable, regardless of whether it is the best interpretation possible. *Brandis v. Kaiser Aluminum & Chemical Corp.,* 47 F.3d 947, 949 (8th Cir.1995); *Erickson v. Aetna Life*

*Ins. Co.,* 777 F.Supp. 1463, 1466 (D.Minn. 1991).

A decision is reasonable if it is based on an evaluation of factors that make a reasonable connection between the issues to be decided, the evidence in the case, the text under consideration, and the conclusions reached. *Erickson,* 777 F.Supp. at 1467. *See also Donaho v. FMC Corp.,* 74 F.3d 894, 899 (8th Cir.1996) ("We believe the proper inquiry is whether the plan administrator's decision was reasonable; i.e., supported by substantial evidence. The pejorative adjectives of 'extraordinarily' (imprudent) or 'extremely' (unreasonable) are encompassed in a reasonableness test."); *Bernards v. United of Omaha Life Ins. Co.,* 987 F.2d 486, 488 (8th Cir.1993) ("To apply the deferential standard of review, 'a reviewing court must be provided with the rationale underlying the trustee's discretionary decision.'") (citing *Cox v. Mid-America Dairymen, Inc.,* 965 F.2d 569, 574 (8th Cir.1992), *aff'd after remand,* 13 F.3d 272 (8th Cir.1993)). A decision is reasonable if a reasonable person *could have* reached a similar decision, given the evidence before him or her, not that a reasonable person *would have* reached that decision. *Donaho,* 74 F.3d at 899 (emphasis original). As long as a reasonable explanation is offered by the Plan administrator, that decision should not be disturbed even if another reasonable, but different, interpretation may be made. *Id.* (citing *Krawczyk v. Harnischfeger Corp.,* 41 F.3d 276, 279 (7th Cir.1994)). Further, the reviewing court is limited to a consideration of only those facts before the plan administrator when it made its decision. *See Bebo v. Minntech Corp.,* 909 F.Supp. 662, 666

---

**3.** The arbitrary and capricious standard is equivalent to an abuse of discretion standard. *See Donaho v. FMC Corp.,* 74 F.3d 894, 898 n. 5 (8th Cir.1996) (holding that when discretionary authority is given by an ERISA plan, the court's review of a plan administrator's decision is only for abuse of discretion, but noting that some courts continue to use the formulation "arbitrary and capricious").

**4.** The Plan provides that defendant "has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." Exhibit 1 to Affidavits of Defendant and Plaintiff at 306.

**5.** The court is aware of the recent Eighth Circuit decision in *Armstrong v. Aetna Life Ins. Co.,* 128 F.3d 1263, 1997 WL 702914 (8th Cir. Nov.13, 1997). There, the court held that a plan administrator's decision must be reviewed under a *de novo* standard in a situation where the plan administrator provided incentives and bonuses to its claims reviewers based partly on the number of claims denied. Such a situation is not presented in this case. The court notes that even if a *de novo* standard were called for, the result would be the same, and summary judgment would still be appropriate under the facts of this case.

(D.Minn.1995) (reviewing this deferential standard of review).

■ In reviewing the reasonableness of defendant's decision, the court begins with the language of the Plan. As noted previously, the Plan provides defendant with full discretion and authority to determine eligibility for benefits and to construe and interpret all relevant terms and provisions of the Plan. In this case, the issue is whether defendant acted reasonably in determining that plaintiff was not "totally disabled," a prerequisite to eligibility under the Plan. The evidence considered by defendant in finding plaintiff not totally disabled and therefore ineligible for benefits includes: (1) a report by Dr. Butwinick, who can be considered plaintiff's treating physician for her fibromyalgia condition; (2) a report of Dr. Zimmerman, another rheumatologist who personally examined plaintiff; (3) an internal review of plaintiff's medical records conducted by defendant; (4) a report of Dr. Brown, who was asked by defendant to opine on plaintiff's condition; and (5) a transferable skills analysis conducted by defendant to identify jobs for which plaintiff was qualified and that purportedly met her physical limitations. The court must examine this record to determine if evidence exists to support the reasonableness of defendant's decision.

In response to an inquiry by defendant, Dr. Butwinick opined that plaintiff's

limitations remain unchanged. Specifically, I do not think she will tolerate any repetitive or physical strainful activity, and there may be days where she is doing poorly to the point that she could not be in the work place, where as other days she may be somewhat functional. Usually, the patients that I see with this condition that are working are involved in work that they can do when they are able and if they are able. Work based out of the patient's home, or sometimes work that the patient can do on their own schedule such as the real estate business has sometimes worked out for these patients. The typical normal work day, fairly physically demanding job, generally is not tolerated by this type of patient. I, therefore, feel she remains disabled regarding her normal occupation, and there would have to be a very special occupation that would fit into her disability, and considering her training, education, and expertise, I am not certain what that would be.

Exhibit 10 to Affidavits of Plaintiff and Defendant. Plaintiff was also examined by Dr. Zimmerman, who, in response to a direct inquiry by defendant, concluded "I believe that Ms. Bremer is not presently disabled from all occupations. There is no evidence in the literature that not working has any benefit for people with fibromyalgia." Exhibit 9 to Affidavits of Defendant and Plaintiff at 134.

Two other doctors, based on a review of plaintiff's records, also found and explicitly indicated that plaintiff was not totally disabled. The first doctor[6] concluded that "there are no objective findings to support [total disability any occupation]." Exhibit 11 to Affidavits of Defendant and Plaintiff. After plaintiff appealed defendant's initial determination to deny benefits, defendant asked Dr. Brown to review plaintiff's records. He concluded that while plaintiff's diagnosis of fibromyalgia is correct, "[i]t does not ... appear that Ms. Bremer is totally disabled from all occupations. It appears that she would be able to work in positions that would allow her to not do the types of repetitive activities that aggravate her complaints." Exhibit 15 to Affidavits of Defendant and Plaintiff.

In her opposition to defendant's motion for summary judgment, plaintiff tries to argue that Dr. Butwinick's opinion is entitled to more deference than those of Dr. Zimmerman and the two reviewing doctors because Dr. Butwinick examined plaintiff on more than one occasion and, unlike the other physicians, was not compensated by defendant. As an initial matter, the court notes that it is not altogether clear that there is a difference of opinion as to the level of plaintiff's disability. Nowhere in his assessment does Dr.

**6.** The court is unable to decipher this doctor's name from his handwritten report. The report is identified in the affidavits simply as "the medical review report of Hartford's internal reviewing physician completed in connection with Bremer's claim for long term disability benefits."

Butwinick expressly say that plaintiff is totally disabled. Even if the court were to read into Dr. Butwinick's words a finding of total disability, as the plaintiff argues, the Plan administrator did not abuse its discretion in finding that plaintiff was not totally disabled simply because there was a conflict of opinion. *See Cox,* 13 F.3d at 275.

■ The court notes that in social security cases the opinion of a treating physician such as Dr. Butwinick is generally accorded more deference than that of a reviewing physician. *See Thompson v. Bowen,* 850 F.2d 346, 349 (8th Cir.1988). This rule is applied in disability cases under ERISA as well. *Donaho,* 74 F.3d at 901. In this case, however, Dr. Butwinick indicated that prior to August 20, 1996, he had not seen plaintiff for one-and-a-half years. Exhibit 10 to Affidavits of Defendant and Plaintiff at 98. This is not a case, therefore, where the treating physician has had extensive contact with the patient and has monitored her progress on a regular basis. Indeed, Dr. Zimmerman's examination of plaintiff and his review of her records, which served as the basis for his conclusions, could be considered more extensive than the analysis conducted by Dr. Butwinick in making his findings.

Defendant also conducted a transferable skills analysis and identified several jobs it felt plaintiff was qualified and fit to perform, including formula room worker, service establishment attendant, locker room attendant, gate guard, and surveillance system monitor. *See* Exhibit 12 to Affidavit of Defendant and Plaintiff. Plaintiff points out that several of the job descriptions generated by this analysis include tasks, such as being a bat boy or bat girl for a baseball team, that plaintiff is unable to perform. Regardless of plaintiff's complaints about several aspects of the analysis, it was reasonable for defendant, in addition to the doctor's evaluations, to rely on the analysis in making its eligibility determination.

The defendant, after reviewing the entire record, was reasonable in determining that plaintiff was not totally disabled. Defendant has provided a reasonable rationale underlying its decision, and there is a rational connection here between the totality of the evidence and the determination of the defendant. There is no doubt that a reasonable person could have reached a similar decision. The court's inquiry is therefore at an end.

While plaintiff's contentions about the credibility and thoughtfulness of the doctor's opinions and survey results would be appropriate in arguing how much weight a jury should accord the different opinions, defendant is correct when it points out that on this motion for summary judgment much of this argument is irrelevant. Given the deferential standard of review, it is not the role of this court to weigh the probative value of the various pieces of evidence. Based on the foregoing, the court finds that defendant's decision to deny plaintiff long-term disability benefits under the Plan to be reasonable in light of the evidence before defendant at the time of the decision.

## CONCLUSION

Based on a review of the file and record, the court concludes that defendant's denial of benefits to plaintiff was neither arbitrary nor capricious, and summary judgment in favor of defendant is appropriate. Therefore, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**